Julian W. Wells, Esq. (jwells@shermanwells.com)
Jordan D. Weinreich, Esq. (jweinreich@shermanwells.com)
SHERMAN WELLS SYLVESTER & STAMELMAN LLP
210 Park Avenue, 2nd Floor
Florham Park, New Jersey 07932
973-302-9700

*Attorneys for Plaintiff Bank Leumi USA*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK LEUMI USA, | Civil Case No.: _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| EDWARD J. KLOSS and KLOSS COMPANY, LLC (d/b/a CRIB & TEEN CITY), | |
| Defendants. | |

Plaintiff Bank Leumi USA ("Bank Leumi"), by way of Complaint against defendants Edward J. Kloss ("Kloss") and Kloss Company LLC (d/b/a Crib & Teen City) ("Crib & Teen City", and collectively with Kloss, the "Defendants"), hereby alleges and says:

## <u>INTRODUCTION</u>

1.     This action arises out of a series of loan advances made by Bank Leumi to Munire Furniture Company, Inc. ("Munire Furniture"), a now-bankrupt furniture manufacturer, that resulted in losses to Bank Leumi in excess of $11 million.  To induce Bank Leumi to loan significant sums of money to Munire Furniture, Defendant Kloss entered into an agreement with Bank Leumi pursuant to which he agreed to subordinate any and all indebtedness due and owing from Munire Furniture to him, which restricted Kloss from collecting any payments on that indebtedness unless and until Munire Furniture fully repaid Bank Leumi.

2.     Unbeknownst to Bank Leumi, Kloss did not—and apparently never intended to—abide by the terms of the parties' agreements. Among other things, he (and Munire Furniture) misrepresented the true extent of Munire Furniture's indebtedness to Kloss by failing to disclose a $300,000 "off-the-books" loan. Further, Kloss did not, in reality, subordinate his loans and refrain from collecting on them. Instead, Kloss used his company, Crib & Teen City, to improperly collect more than $1 million in interest payments on the loans to Munire Furniture that he well knew were prohibited by his agreement with Bank Leumi. These interest payments were made in the form of "credits" and "adjustments" provided by Munire Furniture to Crib & Teen City that were reflected on "tally sheets" that were provided to Kloss but were not part of Munire Furniture's official books and records.

3.     Kloss knew or should have known that those payments should have been made to Bank Leumi to reduce the balance due to Bank Leumi by Munire Furniture. In fact, Kloss admitted in recent court filings that the credits and adjustments to Crib City were, in fact, interest payments on the loans he made to Munire Furniture.

4.     As a result of Kloss' multiple breaches of contract and separate fraudulent misconduct, Bank Leumi has suffered millions of dollars of damages.

## THE PARTIES

5.     Plaintiff Bank Leumi USA ("Bank Leumi") is a bank chartered under the laws of the State of New York with a principal place of business at 579 Fifth Avenue, New York, New York 10017.

6.     Upon information and belief, Defendant Kloss is an individual who resides at 363 Crestmont Road, Cedar Grove, New Jersey 07009 and has a mailing address of P.O. Box 197, Pine Brook, New Jersey 07058.

7.     Upon information and belief, Defendant Crib & Teen City is a limited liability company organized under the laws of the State of New Jersey with its principal place of business located at 225 Grand Street, Paterson, New Jersey.  Upon further information and belief, Kloss is the sole member of Crib & Teen City.  Crib & Teen City was and/or remains in the business of retail sales of children's furniture.

8.     At all times relevant to this action, Kloss was the owner of Crib & Teen City and, in all material respects, was in complete control of Crib & Teen City with regard to all transactions alleged herein, such that Crib & Teen City had no true existence separate from Kloss.  As explained below, Kloss used and dominated Crib & Teen City as his alter ego in order to defraud Bank Leumi and otherwise wrongfully deprive Bank Leumi of rights and money due to it.  Thus, for purposes of this Action, Kloss and Crib & Teen City should be deemed one and the same.

## OTHER RELEVANT ENTITIES

9.     Upon information and belief, Munir Hussain ("Hussain") is an individual who resides at 65 Tintle Road, Kinnelon, New Jersey 07405.  Upon further information and belief, Hussain was the controlling shareholder and the president of Munire Furniture.  On or about December 12, 2014, Hussain, along with his wife, filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (14-35001-CMG).

10.    Upon information and belief, Munire Furniture manufactured children's bedroom furniture that was sold at Crib & Teen City.  On or about September 19, 2014, Munire Furniture filed a Chapter 11 petition in the United States Bankruptcy Court for the District of New Jersey (14-29229-CMG).  Upon information and belief, Munire Furniture continued to operate its

business and manage its affairs as debtor-in-possession until conversion of its case to Chapter 7 on or about September 15, 2015.

11.     Upon information and belief, at all relevant times, the Defendants enjoyed strong business and personal relationships with Hussain and Munire Furniture.   Upon further information and belief, at all relevant times, Hussain and Kloss were close personal friends, and Crib City was one of Munire Furniture's largest customers.

<u>JURISDICTION AND VENUE</u>

12.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, as there exists diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the actions and wrongful conduct of the Defendants underlying these claims occurred in this District.

<u>FACTS</u>

**A.  <u>Bank Leumi's $15 Million Loan To Munire Furniture and Kloss' Subordination</u>**

14.     In early 2011, Munire Furniture approached Bank Leumi regarding the refinancing of a $13.5 million loan facility it had with Sovereign Bank.

15.     Pursuant to a certain Credit and Security Agreement entered into between Munire Furniture and Bank Leumi, effective March 11, 2011 (the "Credit Agreement"), Bank Leumi agreed to provide Munire Furniture with a revolving line of credit in the aggregate principal amount of $15 million (the "Revolving Loan"), which was sufficient to satisfy the outstanding debt to Sovereign Bank and to provide Munire Furniture with additional working capital.

16.     As part of the due diligence process to approve the Revolving Loan, Munire Furniture disclosed to Bank Leumi, among other things, that it had borrowed money from Kloss and that the balance due and owing to Kloss on that loan was $1.5 million ("Kloss Loan #1").

17.     Bank Leumi's approval of the Revolving Loan was subject to Munire Furniture's satisfaction of a number of preconditions.  Relevant here is Bank Leumi's requirement that Kloss agree to subordinate any and all indebtedness due and owing to him from Munire Furniture, including, but not limited to, Kloss Loan #1, to Bank Leumi's loans.

18.     On or about March 9, 2011, Kloss entered into a subordination agreement with Munire Furniture and Bank Leumi (the "Subordination Agreement") pursuant to which Kloss agreed to subordinate "[a]ll claims and demands, and all interest heretofore or hereafter accrued thereon, which [Kloss] now has or may hereafter have or acquire against [Munire Furniture]."

19.     As set forth in the Subordination Agreement, both Kloss and Munire Furniture specifically represented to Bank Leumi that Munire Furniture's debt to Kloss totaled "$1,500,000.00 plus interest (at an annual rate of 10%) and no more."

20.     As further set forth in the Subordination Agreement, Kloss agreed that he "shall not be paid, and no payment on account thereof, nor any security interest therein, shall be created, received accepted or retained nor shall any financing statement be filed with respect thereto by [Munire Furniture] unless and until [Munire Furniture] has paid and satisfied in full all of its obligations to the Bank…"  In other words, Munire Furniture agreed that it would not make any payments on Kloss Loan #1, and Kloss agreed that he would not accept any such payments, unless and until the Revolving Loan was repaid in full.

21.     The Subordination Agreement further provides that Bank Leumi is entitled to recover "all expenses of any kind, including reasonable counsel fees, which [Bank Leumi] may

incur in enforcing any of its rights hereunder, or defending or prosecuting any action related to transactions with the undersigned [*i.e.*, Kloss and Munire Furniture].”

22.     Kloss understood full well that Bank Leumi's agreement to provide Munire Furniture with financing was reliant and contingent upon Kloss' assent to the Subordination Agreement.  In fact, the Subordination Agreement made clear in the first line that the very purpose thereof was “to induce BANK LEUMI USA…to make such advances, loans, extensions of credit, directly or indirectly to MUNIRE FURNITURE.”

23.     Kloss executed the Subordination Agreement on March 9, 2011 before a notary public.

24.     Unbeknownst to Bank Leumi, at the time that Kloss signed the Subordination, there was an additional outstanding loan that Kloss had made to Munire Furniture in the amount of $300,000.00 with an interest rate of 25% (“Kloss Loan #2”, and collectively with Kloss Loan #1, the “Kloss Loans”).  Accordingly, the total amount of Munire Furniture's indebtedness to Kloss was $1.8 million.  Neither Kloss nor Munire Furniture ever disclosed the existence of Kloss Loan #2.  Accordingly, the representation in the Subordination Agreement that $1.5 million was the total of the outstanding indebtedness owed by Munire Furniture to Kloss was false.

25.     Put another way, Kloss knowingly misrepresented the total indebtedness due to him from Munire Furniture.

26.     Making matters worse, Munire Furniture did not record the loan on its balance sheet and Kloss Loan #2 was not reflected in any of Munire Furniture's official books and records.  As a result, Bank Leumi did not discover and was not able to discover Kloss Loan #2 while it was conducting its due diligence in connection with the Revolving Loan.

- 6 -

27.     Bank Leumi reasonably relied on the representations contained in the Subordination Agreement, as well as the applicable books and records, in determining whether to extend credit to Munire Furniture.  But for Kloss' material misrepresentations and/or omissions, Bank Leumi would not have agreed to extend credit to Munire Furniture.

**B.   Defendants' Improper Collection of Interest Payments**

28.     After entering into the Subordination Agreement, Kloss knowingly accepted interest payments on both Kloss Loans despite the express proscriptions thereof set forth in the Subordination Agreement.

29.     Munire Furniture did not make cash payments to pay the interest.  Instead, Munire Furniture set-off the monies it owed to Kloss against monies owed to it from Crib & Teen City for furniture purchases.

30.     The loan payments were reflected in monthly "tally sheets" exchanged between Munire Furniture and Kloss that were not part of Munire Furniture's official books and records. These tally sheets were never shared with Bank Leumi and, upon information and belief, never shared with Munire Furniture's accountants or auditors.

31.     The purpose of the tally sheets was to accurately reflect the true record of Crib & Teen City's account with Munire Furniture after taking into account the loan payments.

32.     The tally sheets contained information concerning: (i) payments by made by Crib & Teen City to Munire Furniture; (ii) invoices issued by Munire Furniture to Crib & Teen City; and (iii) credits to Crib & Teen City for items returned to Munire Furniture.  The tally sheets also contained a "Summary" section in which there were line items for "Loan Interest" and "Monthly Adjustments".

33.     The "Loan Interest," always in the amount of $12,500.00, reflected the monthly interest payment on Kloss Loan #1 ($1,500,000 x 10% ÷ 12 months = $12,500).

34.     The "Monthly Adjustment," always in the amount of $6,250.00, in reality, reflected the monthly interest due on Kloss Loan #2 ($300,000 x 25% ÷ 12 months = $6,250).

35.     During the 32-month period following Kloss' execution of the Subordination Agreement (on March 9, 2011) through and including October 2013, the Defendants improperly, and in direct violation and breach of the Subordination Agreement, accepted interest payments on the Kloss Loans in the total amount of **$600,000.00**.

36.     In addition, beginning in February 2013, the tally sheets also reflected repayment by Munire Furniture of a "Temp Loan" that was apparently extended to it by Defendants (the "Temp Loan").

37.     During the nine-month period from February 2013 through and including October 2013, the Defendants improperly accepted interest payments on the Temp Loan in the total amount of **$54,704.13**.

**C.     Kloss' Reaffirmation of the Subordination Agreement**

38.     In or before November of 2013, Munire Furniture requested that Bank Leumi agree to increase and extend its financing to Munire Furniture.  At the time of Munire Furniture's request, the outstanding balance due and owing by Munire Furniture on the Revolving Loan was $14,940,000.00.

39.     On or about November 12, 2013, Bank Leumi and Munire Furniture entered into an Amended and Restated Credit and Security Agreement (the "Amended Credit Agreement"), which increased the revolving line of credit available to Munire Furniture from $15 million to $17 million.

40.     Like the Credit Agreement, Bank Leumi's approval of the Amended Credit Agreement was conditioned upon Kloss' execution of a Ratification and Reaffirmation of Subordination Agreement (the "Reaffirmation Agreement").

41.     Kloss executed the Reaffirmation Agreement on or about November 15, 2013.

42.     Pursuant to the Reaffirmation Agreement, Kloss agreed that the terms of the Subordination Agreement would remain in full force and effect.

43.     As set forth in the Reaffirmation Agreement, Kloss represented that, "as of the date hereof [November 15, 2013] the aggregate outstanding principal amount of the Junior Debt is $1,500,000". Kloss knowingly failed to disclose in the Reaffirmation Agreement the existence of Kloss Loan #2 and the Temp Loan, and the ongoing interest payments being made thereon. Such failures constitute material misrepresentations and/or omissions.

44.     Brazenly, on November 15, 2013, the same day Kloss executed the Reaffirmation Agreement, Kloss demanded an increase in the interest rate on Kloss Loan #1 from 10% to 20%, retroactive to September 2013. Munire Furniture agreed to Kloss's demand.

45.     Bank Leumi reasonably relied on the Reaffirmation Agreement in agreeing to extend the terms of the Revolving Loan. But for Kloss' material misrepresentations and/or omissions, Bank Leumi would not have agreed to extend the terms of the Revolving Loan and extend further credit to Munire Furniture.

### D.     Kloss' Improper Collection of Interest Payments Continues Unabated

46.     After entering into the Reaffirmation Agreement, Kloss knowingly continued to accept interest payments on both Kloss Loans and the Temp Loan despite the express proscriptions thereof set forth in the Reaffirmation Agreement.

47.     Following execution of the Reaffirmation agreement, the "Monthly Adjustment", constituting interest payments on Kloss Loan #2, remained the same at $6,250, but the monthly "Loan Interest" on Kloss Loan #1 doubled to $25,000, reflecting the increase in the interest rate from 10% to 20% ($1,500,000 x 20% ÷ 12 months = $25,000). In January 2014, Kloss received

a "Loan Interest" payment of $50,000 (the additional $25,000 having reflected the retroactive application of the new interest rate to the months of September 2013 and October 2013).

48.     During the 10-month period following Kloss' execution of the Reaffirmation Agreement on November 15, 2013 through August 2014, the Defendants improperly accepted interest payments on the Kloss Loans in the total amount of **$337,500**.

49.     During the same period, the Defendants improperly accepted interest payments on the Temp Loan in the total amount of **$59,452.10**.

50.     Since Kloss' execution of the Subordination Agreement, the Defendants accepted a total of **$937,500** in interest payments on the Kloss Loans and a total of $**114,156.23** on the Temp Loan.

51.     Thus, the Defendants knowingly received loan repayments in the total amount of **$1,051,656.23**, despite the express proscription thereof set forth in the Subordination Agreement and the Reaffirmation Agreement.

**E.     Bank Leumi's Discovery of Munire Furniture's Fraud**

52.     As part of the ordinary administration of the Revolving Loan, in or about January 2014, Bank Leumi retained CoMetrics Lenders Advisory Services, LLC ("CoMetrics") to perform a collateral field examination of Munire Furniture.  CoMetrics performed its collateral field examination in August 2014.  The purpose of the collateral field examination was to verify, among other things, Munire Furniture's accounts receivable, inventory, collateral, borrowing base certificates, and financial statements, as such information was used in connection with a contractual formula to determine what amounts, if any, would be loaned from Bank Leumi to Munire pursuant to the Revolving Loan.

53.     Through the collateral field examination, CoMetrics discovered that Munire Furniture had falsely reported its financial condition to Bank Leumi, as well as the value and

- 10 -

integrity of Munire Furniture's accounts receivable, inventory, and collateral. Munire Furniture materially and intentionally misrepresented and grossly inflated the accounts receivable and collateral values on the borrowing base certificates it provided to Bank Leumi each month and upon which Bank Leumi relied in advancing sums under the Revolving Loan. Munire Furniture also materially and intentionally misrepresented and grossly inflated its net worth in financial statements provided to Bank Leumi.

54.     CoMetrics concluded that Munire Furniture was maintaining more than one set of books in order to facilitate its fraud upon Bank Leumi. In fact, Matthew Tyler, Munire Furniture's own internal financial consultant, ultimately admitted that Munire Furniture was maintaining more than one set of books, and subsequently, Norman D'Souza (Munire Furniture's Vice President of Finance) swore to the same under oath.

55.     Accordingly, Bank Leumi declared an event of default under the Amended Credit Agreement and, by letter dated September 15, 2014, notified Munire Furniture of its default under the Revolving Loan, declared the Revolving Loan note due and payable, and demanded the immediate payment in full of the outstanding principal balance of $16,990,003.30.

56.     On or about September 18, 2014, Bank Leumi commenced an action in the United States District Court for the District of New Jersey against Munire Furniture and Hussain, styled *Bank Leumi USA v. Munire Furniture Co., Inc., Echelon Furniture, Inc. and Munir Hussain*, Civil Action No. 14-cv-05811. Bank Leumi sought, among other things, damages and a writ of replevin stemming from Munire Furniture's breach of the Amended Credit Agreement, and its fraud with respect to the value of the collateral and Munire Furniture' financial condition.

57.     The very next day, September 19, 2014, Munire Furniture filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.

58.     On December 12, 2014, Hussain, along with his wife, filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.

59.     Due to these bankruptcies, the action against Munire Furniture and Hussain has been stayed.

**F.   Defendants Admit to the Improper Repayments**

60.     On November 3, 2014, Kloss and Crib & Teen City each filed a Proof of Claim in Munire Furniture's bankruptcy proceeding (Claims 20-1 and 19-1, respectively).

61.     In Kloss' Proof of Claim, he disclosed the existence of Kloss Loan #2, and that it had been outstanding since 2004 (*i.e.*, well before he signed the Subordination Agreement and the Reaffirmation Agreement):

| |
|---|
| 1. Amount of Claim as of Date Case Filed:          $                    1,800,000.00 |
| If all or part of the claim is secured, complete item 4 |
| If all or part of the claim is entitled to priority, complete item 5 |
| ☐ Check this box if the claim includes interest or other charges in addition to the principal amount of th |
| 2. Basis for Claim:  2004 - loan for $300,000;  2008 - loan for $1,500,000. |

62.     Further, Kloss also admitted and swore under oath that, notwithstanding his agreement to subordinate his loans to Munire Furniture to those of Bank Leumi, he accepted loan repayments.  Specifically, in a "RIDER TO PROOF OF CLAIM," Kloss, as "Creditor," stated:

> If Promissory Notes were executed in connection with the referenced loans, same cannot be located.  However,  Creditor was required to provide Bank of Leumi with a Subordination Agreement, which confirmed the existence of the loans.  (Creditor cannot locate this Agreement.)  Further, Debtor's representative (Munir Hussain) provided sworn testimony in August 2012, confirming the existence of loans made by Creditor, and the fact that at least $1,500,000 remained due as of that date.  The existence of the debt, and the payment of interest at 20% per annum, was re-confirmed in an email from Munir Hussain dated November 15, 2013.  (See attached).
>
> Interest payments on account of the loans were made by providing Crib & Teen City with monthly credits against the amounts due by Crib & Teen City for merchandise purchased from Debtor.  (The Debtor's records reflect monthly payments of interest on account of the referenced loans.)

63.     In its Proof of Claim, Crib & Teen City echoed Kloss's admissions with respect to the repayment scheme.  It stated in relevant part:

> that Creditor, Crib & Teen City ("Crib City"), purchased merchandise from the Debtor.   The amount due was reduced, by – among other things – crediting Crib City's account with interest payments that were to be made by the Debtor to Crib City's principal (Edward J. Kloss) on account of loans made to the Debtor, that are the subject of a separate Proof of Claim.
>
> As a result of the aforesaid credits, Crib City had a credit balance on its account as at the filing of Debtor's Petition in Bankruptcy.  [See attached statements.]
>
> The Debtor's records confirm the credits provided, and the credit balance due to Crib City.

64.     Thus, by their own admissions, the Defendants cannot argue that the "credits" and "adjustments" issued to Crib & Teen City were not interest payments accepted in violation of the Subordination Agreement and the Reaffirmation Agreement.   On the contrary, the Defendants swore under oath that the credits were, in fact, interest payments on the Kloss Loans and the Temp Loan.

**G.   Defendants File a Now-Dismissed State Court Action in an Attempt to Preempt and Prevent this Action**

65.     Upon discovering that the Defendants accepted payments on the Kloss Loans and the Temp Loan in violation of the Subordination Agreement and the Reaffirmation Agreement, Bank Leumi sent the Defendants a letter, dated January 19, 2017, in which Bank Leumi demanded that the Defendants reimburse it for the improper payments that they had accepted.

66.     Less than one month later, on or about February 15, 2017, the Defendants filed a complaint in Passaic County Superior Court (PAS-L-537-17) (the "Passaic Action") against Bank Leumi, Hussain,[1] Norman D'Souza, Lavina D'Souza (a former employee of Munire Furniture), Joseph DeVito (Munire Furniture's accountant), Werdann DeVito LLC (Munire Furniture's accounting firm), and Kurt Olender (Munire Furniture's attorney).

67.     The Defendants asserted two claims against Bank Leumi:  (i) that Bank Leumi was negligent in failing to detect the fraud committed by Munire Furniture and its employees and in lending beyond that which was permitted by the Credit and Amended Credit Agreements; and (ii) that Bank Leumi was unjustly enriched when it recovered certain monies from Munire Furniture following the bankruptcy, despite having suffered losses of over $11 million on the Revolving Loan.

68.     Bank Leumi filed a pre-answer motion to dismiss the Passaic Action, as against Bank Leumi.

69.     On June 29, 2017, Judge Liliana S. De-Avila-Silebi, J.S.C. granted Bank Leumi's motion and dismissed the Passaic Action, as against Bank Leumi, with prejudice.

## COUNT I
### (Breach of Contract – Against Defendant Edward J. Kloss)

70.     Bank Leumi repeats and reiterates each and every allegation set forth in its Complaint above and incorporates the same herein by reference as if set forth in their entirety.

---

[1] Defendants named Hussain as a defendant in the Passaic Action despite the fact that Hussain had received a bankruptcy discharge on or about June 8, 2015.  On April 7, 2017, Hussain commenced an adversary case against Defendants in the United States Bankruptcy Court for the District of New Jersey seeking a declaration that Defendants' claims against Hussain are subject to the discharge order and an injunction prohibiting Plaintiffs from prosecuting this action against Hussain.  On April 17, 2017, the Bankruptcy Court entered a Consent Order staying the Passaic Action as against Hussain pending further order from that Court.

71.     The Subordination Agreement and the Reaffirmation Agreement explicitly prohibited Kloss from accepting repayment of any indebtedness due to him from Munire Furniture, including, but not limited to, any indebtedness arising from the Kloss Loans and/or the Temp Loan, unless and until any indebtedness owed to Bank Leumi by Munire Furniture was fully repaid.

72.     Following Kloss' execution of the Subordination Agreement through the date that Munire Furniture filed for bankruptcy in September 2014, Kloss demanded, and Defendants received, interest payments on the Kloss Loans and the Temp Loan in the total amount of $1,051,656.23.

73.     At the time those payments were demanded and received, there was balance due and owing by Munire Furniture on the Revolving Loan.

74.     Accordingly, such payments were received in direct violation of the terms of the Subordination Agreement and the Reaffirmation Agreement.

75.     As set forth in their respective Proofs of Claim filed in the Munire Furniture bankruptcy, the Defendants do not dispute that they received such payments.

76.     As a result of Kloss' multiple, material breaches of the Subordination Agreement and of the Reaffirmation Agreement, Bank Leumi has been damaged in an amount not less than $1,051,656.23.

77.     Further, pursuant to the Subordination Agreement and the Reaffirmation Agreement, Bank Leumi is entitled to recover from Kloss its attorneys' fees and all other expenses incurred in connection with this Action.

## COUNT II
### (Fraud – Against All Defendants)

78.     Bank Leumi repeats and reiterates each and every allegation set forth in its Complaint above and incorporates the same herein by reference as if set forth in their entirety.

79.     At the time Kloss executed the Subordination Agreement on March 9, 2011, he intentionally concealed the existence of Kloss Loan #2 and misrepresented that total amount of indebtedness due to Kloss from Munire Furniture was $1,500,000.00, "and no more."

80.     Similarly, at the time Kloss executed the Reaffirmation Agreement on November 15, 2013, he intentionally and knowingly concealed the existence of Kloss Loan #2 and the Temp Loan, and, again, misrepresented that total amount of indebtedness due to Kloss from Munire Furniture was $1,500,000.00.   Kloss also intentionally and knowingly failed to disclose that he had breached the Subordination Agreement by causing Crib & Teen City to accept interest payments on the Kloss Loans and the Temp Loan.

81.     In connection with Bank Leumi's decision to enter into the Credit Agreement, pursuant to which it extended $15 million of credit to Munire Furniture in the form of the Revolving Loan, Bank Leumi reasonably relied on the material misrepresentations and/or omissions made by Kloss in the Subordination Agreement.

82.     In connection with Bank Leumi's decision to enter into the Amended Credit Agreement, pursuant to which it increased the credit available under the Revolving Loan to $17 million and extended the term of the Revolving Loan, Bank Leumi reasonably relied on the material misrepresentations and/or omissions made by Kloss in the Reaffirmation Agreement.

83.     Bank Leumi has been damaged in reliance upon Defendants' fraudulent misrepresentations, omissions of material information, and fraudulent and deceitful acts,

practices and course of business, for which Defendants should be required to pay damages to Bank Leumi in an amount to be determined at trial.

## COUNT III
### (Fraudulent Inducement – Against All Defendants)

84.     Bank Leumi repeats and reiterates each and every allegation set forth in its Complaint above and incorporates the same herein by reference as if set forth in their entirety.

85.     At the time Kloss executed the Subordination Agreement on March 9, 2011, he intentionally concealed the existence of Kloss Loan #2 and misrepresented that the total amount of indebtedness due to Kloss from Munire Furniture was $1,500,000.00, "and no more."

86.     Bank Leumi was not able to discover Kloss Loan #2 while it was conducting its due diligence of Munire Furniture because Munire Furniture did not record the loan on its balance sheet and Kloss Loan #2 was not reflected in any of Munire Furniture's official books and records.

87.     Further, upon information and belief, Kloss knew or should have known that Kloss Loan #2 was not reflected on Munire Furniture's official books and records.

88.     Kloss, on behalf of himself and Crib & Teen City, made material misrepresentations and/or omissions concerning the outstanding indebtedness due by Munire Furniture, and the nature of the interest repayment scheme, for the sole purpose of inducing Bank Leumi to enter into the Credit Agreement.

89.     Kloss knew that Bank Leumi would rely on his misrepresentations and/or omissions by, among other things, the fact that the Subordination Agreement made clear in the first line that the very purpose thereof was "to induce BANK LEUMI USA…to make such advances, loans, extensions of credit, directly or indirectly to MUNIRE FURNITURE."

90.     Had Kloss disclosed Kloss Loan #2, Bank Leumi would have, at that time, discovered that Munire Furniture was maintaining more than one set of books, and would not have loaned Munire Furniture any money whatsoever.

91.     Bank Leumi reasonably relied on Kloss' misrepresentations and/or omissions and agreed to enter into the Credit Agreement and to provide Munire Furniture with $15 million in financing, the full amount of which Munire Furniture drew upon pursuant to the Credit Agreement.

92.     Bank Leumi has been damaged in reliance upon Defendants' fraudulent misrepresentations, omissions to disclose material information, and fraudulent and deceitful acts, practices and course of business, for which Defendants should be required to pay damages to Bank Leumi in the amount of $15,000,000.00.

## COUNT IV
**(Fraudulent Inducement – Against All Defendants)**

93.     Bank Leumi repeats and reiterates each and every allegation set forth in its Complaint above and incorporates the same herein by reference as if set forth in their entirety.

94.     At the time Kloss executed the Subordination Agreement on March 9, 2011, he intentionally concealed the existence of Kloss Loan #2 and misrepresented that total amount of indebtedness due to Kloss from Munire Furniture was $1,500,000.00, "and no more."

95.     Further, upon information and belief, Kloss never intended to abide by the express obligations set forth in the Subordination Agreement that required him to subordinate his loans to Bank Leumi's Revolving Loan.  In fact, three weeks after signing the Subordination Agreement, the Defendants accepted interest payments on the Kloss Loans totaling $18,750.

96.     Similarly, at the time Kloss executed the Reaffirmation Agreement on November 15, 2013, he intentionally concealed the existence of Kloss Loan #2 and the Temp

Loan, and, again, misrepresented that total amount of indebtedness due to Kloss from Munire Furniture was $1,500,000.00.

97.   Further, upon information and belief, Kloss never intended to abide by the express obligations set forth in the Reaffirmation Agreement that required him to subordinate his loans to Bank Leumi's Revolving Loan.  In fact, two weeks after signing the Subordination Agreement, the Defendants accepted interest payments on the Kloss Loans totaling $31,250 and interest on the Temp Loan in the amount of $5,945.21.

98.   Brazenly, the same day that Kloss executed the Reaffirmation Agreement, he demanded that Munire Furniture accept a two-fold increase in the interest rate that it was paying on Kloss Loan #1 (from 10% to 20%), which Munire Furniture apparently had no choice but to accept.

99.   These facts, coupled with the more than $1 million in interest payments that Defendants accepted in violation of the Subordination Agreement and the Reaffirmation Agreement, provide conclusive evidence that, at all times, Kloss intended to continue business as usual with the surreptitious loan repayment scheme embodied in the tally sheets.  Indeed, as reflected in the tally sheets, Kloss did not allow his execution of the Subordination Agreement and the Reaffirmation Agreement to interrupt the loan repayment scheme in any way.

100.  Kloss, on behalf of himself and Crib & Teen City, made material misrepresentations and/or omissions concerning the outstanding indebtedness due by Munire Furniture, and the nature of the interest repayment scheme, for the sole purpose of inducing Bank Leumi to enter into the Amended Credit Agreement.

101.  Kloss knew that Bank Leumi would rely on his misrepresentations and/or omissions by, among other things, the fact that the Subordination Agreement, as reaffirmed by

the Reaffirmation Agreement, made clear in the first line that the very purpose thereof was "to induce BANK LEUMI USA…to make such advances, loans, extensions of credit, directly or indirectly to MUNIRE FURNITURE."

102.   Bank Leumi reasonably relied on Kloss' misrepresentations and/or omissions and agreed to provide Munire Furniture with an additional $2 million in financing.

103.   Absent execution of the Reaffirmation Agreement, Bank Leumi would not have agreed to enter into the Amended Credit Agreement.

104.   At the time that Bank Leumi declared the Revolving Loan to be in default, the outstanding balance due and owing on the Revolving Loan was $16,990,003.30, an excess of $1,990,003.30 over the original credit limit of $15 million.

105.   Bank Leumi has been damaged in reliance upon Defendants' fraudulent misrepresentations, omissions to disclose material information, and fraudulent and deceitful acts, practices and course of business, for which Defendants should be required to pay damages to Bank Leumi in an amount to be determined at trial, but in no case less than $1,990,003.30.

### <u>COUNT V</u>
**(Aiding and Abetting (in the alternative) – Against Crib & Teen City)**

106.   Bank Leumi repeats and reiterates each and every allegation set forth in its Complaint above and incorporates the same herein by reference as if set forth in their entirety.

107.   Crib & Teen City knew that Kloss was defrauding Bank Leumi.

108.   Crib & Teen City aided, abetted, participated in and/or profited from the wrongful acts committed by Kloss.

109.   As a result, Bank Leumi has been damaged in an amount to be determined at trial.

## COUNT VI
### (Unjust Enrichment (in the alternative) – Against Crib & Teen City)

110.   Bank Leumi repeats and reiterates each and every allegation set forth in its Complaint above and incorporates the same herein by reference as if set forth in their entirety.

111.   Between March 2011 and August 2014, Crib & Teen City accepted "credits" and "adjustments" issued by Munire Furniture, which had the effect of reducing the amount of money owed by Crib & Teen City to Munire Furniture for furniture that it purchased.

112.   These credits and adjustments were, in reality—and as admitted by Defendants in their respective Proofs of Claim—payments made by Munire Furniture to Kloss for interest due on the Kloss Loans and the Temp Loan.

113.   The Subordination Agreement and the Reaffirmation Agreement expressly prohibited Munire Furniture from making such payments and Kloss from accepting them.

114.   Those payments should have, instead, been paid to Bank Leumi to reduce the outstanding principal due on the Revolving Loan.

115.   Accordingly, as a result, Crib & Teen City has been enriched in an amount not less than $1,051,656.23.

116.   Allowing Crib & Teen City to retain Bank Leumi's funds would be unjust.

## COUNT VII
### (Tortious Interference (in the alternative) – Against Crib & Teen City)

117.   Bank Leumi repeats and reiterates each and every allegation set forth in its Complaint above and incorporates the same herein by reference as if set forth in their entirety.

118.   It is undisputed that, per the Subordination Agreement and the Reaffirmation Agreement, a contractual relationship existed between Bank Leumi and Kloss.

119.   At all times relevant to this action, Kloss was the owner of Crib & Teen City, and, in all material respects, was in complete control of Crib & Teen City.  As such, Crib & Teen City

had actual knowledge of the Subordination Agreement and the Reaffirmation Agreement, and the terms thereof.

120.    Crib & Teen City intentionally interfered with Bank Leumi's contractual relationship with Kloss by accepting "credits" and "adjustments" from Munire Furniture that all parties agree were interest payments on the Kloss Loans and the Temp Loan.

121.    The acceptance of those interest payments on behalf of Kloss caused Kloss to breach both the Subordination Agreement and the Reaffirmation Agreement.

122.    As a result of Crib & Teen City's interference with Bank Leumi's contractual relationship with Kloss, Bank Leumi has been damaged in an amount not less than $1,051,656.23.

## COUNT VIII
### (Declaratory Judgment pursuant to 28 U.S.C. § 2201, *et seq.* – Against All Defendants)

123.    Bank Leumi repeats and reiterates each and every allegation set forth in its Complaint above and incorporates the same herein by reference as if set forth in their entirety.

124.    Kloss caused his company, Crib & Teen City, to accept "credits" and "adjustments", which had the effect of reducing the amount of money owed by Crib & Teen City to Munire Furniture for furniture that it purchased.

125.    In reality, and as Kloss and Crib & Teen City admitted in, among elsewhere, the respective Proofs of Claim they filed in connection with Munire Furniture's bankruptcy, these credits and adjustments were payments of interest due on the Kloss Loans and on the Temp Loan.

126.    In other words, Kloss caused Crib & Teen City to accept payments that were due to Kloss for monies that Kloss himself loaned to Munire Furniture.

127.    In view of the foregoing, an actual and justifiable controversy exists between Bank Leumi and Defendants as to Crib & Teen City's obligations pursuant to the Subordination Agreement and the Reaffirmation Agreement.

128.    A determination that Crib & Teen City is the alter-ego of Kloss would allow Bank Leumi to hold Crib & Teen City liable for Kloss' breach of the Subordination Agreement and the Reaffirmation Agreement, and to hold Crib & Teen City liable for the misrepresentations and/or omissions made by Kloss in connection with the Subordination Agreement and the Reaffirmation Agreement.

129.    Accordingly, Bank Leumi is seeking declaratory judgment that Crib & Teen City is Kloss' alter-ego and may be held liable for Kloss' breaches of the Subordination Agreement and the Reaffirmation Agreement, and for the misrepresentations and/or omissions made by Kloss to Bank Leumi.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Bank Leumi USA respectfully requests that this Court enter judgment in its favor and against the Defendants, individually and jointly and severally, and grant Bank Leumi the following relief:

(a)    Compensatory damages in an amount to be determined at trial;

(b)    Entry of judgment declaring that Crib & Teen City is the alter-ego of Kloss;

(c)    Punitive and/or exemplary damages;

(d)    Pre-judgment and post-judgment interest;

(e)    Attorneys' fees and all expenses of any kind incurred by Bank Leumi in connection with this Action, pursuant to the Subordination Agreement and the Reaffirmation Agreement;

(f)    Costs of suit; and

(g)     Such other and further relief as the Court deems just and equitable.

DATED:     October 2, 2017

SHERMAN WELLS SYLVESTER &
STAMELMAN LLP
*Attorneys for Plaintiff Bank Leumi USA*


By: _____/s/Jordan D. Weinreich_____
        JORDAN D. WEINREICH

210 Park Avenue, 2nd Floor
Florham Park, New Jersey 07932
973-302-9695
jweinreich@shermanwells.com

4821-5684-7437, v. 3

- 24 -