UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BANK LEUMI USA,<br><br>　　　Plaintiff,<br><br>v.<br><br>EDWARD J. KLOSS and KLOSS COMPANY, LCC (d/b/a CRIB & TEEN CITY)<br><br>　　　Defendants. | Civil Action No.: 17-7729 (JLL)<br><br>OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendants Edward J. Kloss and Kloss Company's motion to dismiss Bank Leumi's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and New Jersey's Entire Controversy Doctrine. (ECF No. 13). Plaintiff has submitted opposition, (ECF No. 19), and Defendants have submitted a reply thereto, (ECF No. 21). The Court has read the parties' submissions and considers this matter without oral argument in accordance with Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court grants Defendants' motion to dismiss.

## I.　BACKGROUND[1]

This action arises out of a series of loans made by Bank Leumi to Munire Furniture

---

[1] The facts as stated herein are taken as alleged in Plaintiff's Complaint. (ECF No. 1 ("Compl.")). For purposes of this motion to dismiss, these allegations are accepted by the Court as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) ("The District Court, in deciding a motion [to dismiss under Rule] 12(b)(6), was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

1

Company, Inc. ("Munire Furniture"), which allegedly resulted in losses to Bank Leumi of over $11 million. (Compl. ¶ 1). On March 11, 2011, Bank Leumi agreed to provide Munire Furniture with a revolving line of credit of $15 million. (Compl. ¶ 15). As part of the loan approval process, Munire Furniture disclosed that it had an existing loan with a remaining balance of $1.5 million from Kloss. (Compl. ¶ 15.). As a pre-condition of the loan to Munire Furniture, Bank Leumi required that Kloss enter into a subordination agreement to forego any claims, demands, and "all interest" accrued from the loan to Munire Furniture. (Compl. ¶¶ 17–18). At the time Kloss signed the subordination agreement, "there was an additional outstanding loan that Kloss had made to Munire Furniture in the amount of $300,000.00 with an interest rate of 25%" that had not been disclosed. (Compl. ¶ 24). Kloss also allegedly accepted interest payments on both of its loans to Munire Furniture despite the clause in the subordination agreement prohibiting Kloss from doing so. (Compl. ¶ 28).

On November 12, 2013, Bank Leumi and Munire Furniture entered into an amended credit agreement, which increased the credit available to Munire Furniture from $15 million to $17 million. (Compl. ¶ 39). In order to secure this credit increase, Kloss reaffirmed and ratified the subordination agreement. (Compl. ¶ 40). Bank Leumi contends that, once again, Kloss "knowingly failed to disclose" the $300,000 loan and an additional "temp loan" and continued to accept interest payments on all loans. (Compl. ¶¶ 43, 46). Around January 2014, CoMetrics Lenders Advisory Services, LCC found that Munire Furniture had falsely reported its financial condition to Bank Leumi. (Compl ¶¶ 52–53). Accordingly, Bank Leumi declared the loan note due and demanded immediate payment in full of the balance of $16,990,003.30. (Compl. ¶ 55).

On September 18, 2014, Bank Leumi commenced an action in the United States District Court for the District of New Jersey against Munire Furniture and Munir Hussain—the president

and controlling shareholder of Munire Furniture—seeking damages and a writ of replevin. (Compl. ¶ 56). That case is currently stayed because Munire Furniture and Hussain filed voluntary petitions for relief in the United States Bankruptcy Court for the District of New Jersey. (Compl. ¶¶ 57–59). On November 3, 2014, Defendants filed Proofs of Claim in the bankruptcy proceeding. (Compl. ¶ 60). In their Proofs of Claim, Defendants disclosed the existence of the $300,000 loan and the acceptance of loan repayments. (Compl. ¶¶ 61–63). Upon discovering that Defendants accepted payments on the loans, Bank Leumi "demanded that the Defendants reimburse it for the improper payments that they had accepted." (Compl. ¶ 65).

Soon thereafter, Defendants filed a complaint in Passaic County Superior Court against Bank Leumi, Hussain, and other individuals, ("the Passaic Action"). (Compl. ¶ 66). Defendants asserted that Bank Leumi was negligent in failing to detect the fraud committed by Munire Furniture and that it was unjustly enriched when it recovered monies from Munire Furniture following the bankruptcy. (Compl. ¶ 67). Bank Leumi filed a pre-answer motion to dismiss and, on June 29, 2017, Judge Liliana S. De-Avila-Silebi granted Bank Leumi's motion and dismissed the action against Bank Leumi with prejudice. (Compl. ¶¶ 68–69).

Bank Leumi then filed this action against Defendants, alleging that Defendants breached the terms of the subordination and affirmation agreements as well as claims of fraud, fraudulent inducement, and declaratory judgment against Defendants, and claims of aiding and abetting, unjust enrichment, and tortious interference (all in the alternative) against Kloss Company. (Compl. ¶¶ 70–129). Defendants now move to dismiss Bank Leumi's Complaint under the entire controversy doctrine.

## II. LEGAL STANDARD

"[A]pplication of the Entire Controversy Doctrine . . . does not 'defeat the subject matter jurisdiction of' a federal court." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (quoting *Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1190 (3d Cir. 1989)). Rather, an affirmative defense based on the doctrine "could properly be the grounds for a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed R. Civ. P. 12(b)(6)." *Id.* at 886.

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. ANALYSIS

The entire controversy doctrine is an affirmative defense that is waived unless pleaded or otherwise raised in a timely manner. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999). Like traditional *res judicata*, the entire controversy doctrine is intended to prevent piecemeal litigation by requiring the assertion of all claims arising from a single controversy in one action. *Prevratil v. Mohr*, 145 N.J. 180, 190 (1996). The doctrine "bars a subsequent action only when a prior action based on the same transactional facts has been tried to judgment or settled." *Allstate N.J. Ins. Co. v. Cherry Hill Pain and Rehab Inst.*, 389 N.J. Super. 130, 140 (App. Div. 2006) (quoting *Arena v. Borough of Jamesburg*, 309 N.J. Super. 106, 111 (App. Div. 1998)). The doctrine's purposes are to "encourage comprehensive and conclusive litigation determinations, to avoid fragmentation of litigation, and to promote party fairness and judicial economy and efficiency." *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 173 N.J. 59, 70 (2002) (quoting Pressler, *Current N.J. Rules*, comments 1 & 2 on R. 4:30A (2002)). In applying the doctrine, "the central consideration is whether the claims . . . arise from related facts or the same transaction or series of transactions." *DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995). The doctrine is an equitable one, based on judicial discretion and the facts of each case. *In re Mullarkey*, 536 F.3d 215, 230 (3d Cir. 2008). Because New Jersey law determines the preclusive effect of a prior New Jersey state court judgment on the merits, the entire controversy doctrine is applicable here. *Paramount*, 178 F.3d at 142; *Rycoline*, 109 F.3d at 887.

In this instant action, neither party disputes that the Passaic Action arose "from related facts

5

or the same transaction or series of transactions." *DiTrolio*, 142 N.J. at 267. Rather, Bank Leumi claims that they did not have a full and fair opportunity to litigate their claim in the Passaic Action. (ECF No. 19 at 2). Bank Leumi contends that, under New Jersey Court Rule 4:6-2, it could "assert the defense of failure to state a claim upon which relief could be granted" only by an answer or a motion, but not both. (ECF No. 19 at 6, 10). Bank Leumi chose to raise their defense in a motion and that motion had to be raised "before pleading if a further pleading [was] to be made." N.J. Ct. R. 4:6-2. Bank Leumi argues it "never had the chance to" file a responsive pleading because Defendant's complaint was dismissed in full with prejudice and a "counterclaim can only be asserted in a pleading." (ECF No. 19 at 6).

New Jersey's entire controversy doctrine explains that "a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action." *Paramount*, 178 F.3d at 137. However, application of the doctrine is limited. "[T]he party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Fisher v. Yates*, 270 N.J. Super. 458, 469 (App. Div. 1994) (quoting *Cafferata v. Peyser*, 251 N.J. Super. 256, 261 (App. Div. 1991)). If "a claim could not have been presented in the first action, then it will not be precluded in a later action." *Watkins v. Resorts Int'l Hotel and Casino*, 124 N.J. 398, 413 (N.J. 1991).

Bank Leumi frames its inability to fully and fairly litigate this claim as a necessary consequence of New Jersey state courts' rules. However, the rule at issue here is clearly permissive. Rule 4:6-2 states that "[e]very defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses, unless otherwise provided by R. 4:6-3, *may*

*at the option of the pleader be made by motion, with briefs*: . . . (e) failure to state a claim for which relief can be granted." N.J. Ct. R. 4:6-2 (emphasis added). Bank Leumi chose to remove itself as quickly as possible from the Passaic Action. It could have asserted its defense of failure to state a claim in an answer along with the counterclaims it is currently asserting in this action. *See Allstate*, 389 N.J. Super. at 137 ("The rule [4:6-2] gives the defendant the option to raise the enumerated defenses either by motion or in the answer. Indeed, the rule contemplates that the enumerated defenses that can be raised by motion may also be raised in an answer.").

In support of its argument, Bank Leumi relies heavily on *Allstate*. In *Allstate*, Cherry Hill Pain and Rehab Institute ("Cherry Hill") filed an action against Allstate Insurance Company ("Allstate") seeking personal injury protection reimbursement. 389 N.J. Super. at 133. Allstate filed a pre-answer motion to dismiss under Rule 4:6-2 and the Trial Court granted the motion on the grounds that Cherry Hill lacked standing. *Id.* at 134. Allstate then filed a separate complaint alleging fraudulent billing in violation of the Insurance Fraud Prevention Act. *Id.* at 135. Cherry Hill filed a motion to dismiss arguing that the entire controversy doctrine barred Allstate's claims. *Id.* The Trial Court granted the motion, reasoning that Allstate should have filed an answer in the prior action. *Id.* On appeal, the Appellate Division reversed the Trial Court's decision due to considerations of "the promotion of conclusive determinations, public policy, party fairness, as well as judicial economy." *Id.* at 141.

In reversing the Trial Court's decision, the *Allstate* Court relied on reasoning related to facts that are distinct from those now before this Court. The *Allstate* Court leaned heavily on the public policy of favoring the elimination of insurance fraud in New Jersey, as well as the fact that Cherry Hill's claim was dismissed upon a lack of standing, and that Allstate's "complaint involved separate and discrete claims from those" in Cherry Hill's complaint. *Id.* at 142. Here, public

policy would naturally favor the elimination of bank fraud, but the alleged fraud at issue here is small compared to the scale of the fraud in *Allstate*. This case involves an alleged fraud on Bank Leumi by Kloss and Kloss Company with regard to the extension of one line of credit. In *Allstate*, the problem of insurance fraud constituted a "problem of massive proportions," and both complaints alleged fraudulent billing practices harming nearly 350 insureds. *Id.* at 135, 141–42. Furthermore, the Kloss Defendants' motion in the Passaic Action was converted to a motion for summary judgment and specifically analyzed the Kloss Defendants' claims of negligence and unjust enrichment. A dismissal with prejudice "constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial." *Dowdell v. Univ. of Med. and Dentistry of N.J.*, 94 F. Supp. 2d 527, 533 (D.N.J. 2000) (quoting *Feinsod v. Noon*, 261 N.J. Super. 82, 84 (App. Div. 1992)). Lastly, as mentioned above, the Passaic Action concerned related facts and the same series of transactions.

Federal courts in this Circuit have applied the entire controversy doctrine to bar claims from plaintiffs in situations that are more sympathetic than the one Bank Leumi has put itself in. In *Kozyra v. Allen*, the Third Circuit affirmed the District Court's application of the entire controversy doctrine to the personal injury claim of a driver injured in a three-car collision. 973 F.2d 1110, 1110 (3d Cir. 1992). The three drivers in the accident were Geraldine Della Buono (the plaintiff), Paul Allen, and Angelo Soldani. *Id.* at 1111. Soldani brought a negligence action in New Jersey state court against Allen, the owner of the tractor operated by Allen, and Della Buono for damages. *Id.* Della Buono was served with the summons and complaint, which her husband forwarded to her liability insurance carrier, who defended the suit. *Id.* The carrier filed an answer in the state court action, which included a cross-claim for contribution against Allen and the tractor owner, but did not assert any affirmative claims for Della Buono's personal injuries.

8

*Id.* Soldani eventually settled the case with Allen and the tractor owner and voluntarily dismissed the case against Della Buono. *Id.* Della Buono then filed a negligence action in federal court against Allen and the tractor owner. *Id.*

The Third Circuit reasoned that the entire controversy doctrine barred Della Buono's negligence action, as "the state court action involved the same facts and circumstances concerning the automobile accident," and concluded that the "state court, as the initial forum, was capable of adjudicating any claims the parties may have had for injuries resulting from the negligence of any of the other parties in that action." *Id.* at 1113. The Third Circuit noted that Della Buono's claim was sympathetic and acknowledged that the district court "questioned the fairness of an insurance carrier binding a party who never consulted with an attorney of her choice or who never actually participated in person through her attorney," yet upheld the district court's conclusion that "because [Della Buono] had actual knowledge that she was a named defendant in the state court action and was aware that the action proceeded to arbitration, her claim was precluded by the entire controversy doctrine." *Id.*

In *Petrocelli v. Daniel Woodhead Co.*, the Third Circuit applied the entire controversy doctrine to bar a products liability action by a plaintiff who had been a defendant in an earlier state court case arising from the same incident. 993 F.2d 27, 27 (3rd Cir. 1993). *Petrocelli* concerned a fire that occurred at a New Jersey gas station, damaging the premises and injuring the plaintiff, Peter Petrocelli. *Id.* at 28. After the gas station owner filed a property damage claim with his insurer, the Insurance Company of North America, the insurer filed a subrogation action against Petrocelli in state court. *Id.* Petrocelli's counsel filed a separate complaint in the same court against the defendant, Daniel Woodhead Co. *Id.* The subrogation action was eventually dismissed with prejudice, but Daniel Woodhead Co. removed its case to federal court, and the Third Circuit

9

upheld the district court's decision granting summary judgment on the basis of the entire controversy doctrine. *Id.* The Court relied extensively on its prior reasoning in *Kozyra*, holding that "because Petrocelli did not join Woodhead in the [subrogation] suit, as required by the entire controversy doctrine, he is now precluded from raising his personal injury claims." *Id.* at 30.

The entire controversy doctrine is an equitable one, and the Court must consider the doctrine's objectives: "to encourage comprehensive and conclusive litigation determinations, to avoid fragmentation of litigation, and to promote party fairness and judicial economy and efficiency." *K-Land Corp. No. 28* 173 N.J. at 70 (quoting Pressler, *Current N.J. Rules*, comments 1 & 2 on R. 4:30A (2002)). The application of the doctrine here would encourage comprehensive litigation determinations, prevent fragmentation of litigation, and promote judicial economy, and is at least as fair to the parties as this Circuit's prior decisions. The state court in which the Kloss Defendants filed their suit against Bank Leumi was fully capable of adjudicating the breach of contract and fraud claims that Bank Leumi has now brought against the Kloss Defendants. At the time the Kloss Defendants initiated the Passaic Action, Bank Leumi was aware of the facts giving rise to their claims in this action. (Compl. ¶¶ 65–66). The record does not indicate that the Kloss Defendants engaged in tactics designed to prevent Bank Leumi from properly bringing its counterclaims in the Passaic Action; rather, Bank Leumi chose to file a pre-answer motion to dismiss for failure to state a claim instead of asserting that defense in an answer along with its counterclaims. The Passaic Action involved the same parties and issues present in the case before this Court, and Bank Leumi fully participated in that case.

Whether it is "fair" to require a party to let claims against it linger by asserting the defense of failure to state a claim in an answer when those claims could be disposed of by a pre-answer motion to dismiss is unclear, and like the Third Circuit in *Kozyra* and *Petrocelli*, this Court is

sympathetic to Bank Leumi's situation. According to this Court's research, the New Jersey Supreme Court has not directly addressed the issue of whether the entire controversy doctrine bars the claims of a defendant in a prior action, where that defendant files a pre-answer motion to dismiss in lieu of an answer with an affirmative defense and counterclaims. Thus, this Court must follow the guidance of the Third Circuit and New Jersey's appellate courts in its application of the entire controversy doctrine, and finds this case to align more squarely with the facts and rationale of *Kozyra* and *Petrocelli* than with those of *Allstate*. Bank Leumi has thus "failed to avail itself of opportunities to pursue its remedies" in the Passaic Action by filing a pre-answer motion to dismiss rather than an answer, and its claims are barred by the entire controversy doctrine. *AHS Hosp. Corp. v. Mainardi Mgmt. Co., LP*, No. L-1407-14, 2017 WL 2991874, at *6 (N.J. Super. Ct. App. Div. July 14, 2017).

## IV. CONCLUSION

For the aforementioned reasons, the Defendants' Motion to Dismiss, (ECF No. 13), is hereby granted. An appropriate Order accompanies this Opinion.

DATED: September 13th, 2018

JOSE L. LINARES
Chief Judge, United States District Court